The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ZENWORK, INC. f/k/a TECHATLANTIS, INC., | NO.  2:16-cv-01325-RAJ |
| Plaintiff, | AVALARA'S MOTION FOR ORDER TO SHOW CAUSE OR IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION |
| v. | |
| AVALARA, INC., | NOTED:  January 6, 2017 |
| Defendant. | |
| AVALARA, INC., | |
| Counterclaim Plaintiff, | |
| v. | |
| ZENWORK, INC. f/k/a TECHATLANTIS, INC. d/b/a EXAKTO.COM; 1099ONLINE.COM, TAX1099.COM; EZ2290; EZIFTA; EZEXTENSION; and FBARONLINE, | |
| Counterclaim Defendants. | |

AVALARA'S MOTION FOR ORDER TO SHOW
CAUSE OR IN THE ALTERNATIVE FOR
PRELIMINARY INJUNCTION- 1
No. 2:16-cv-01325-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

# I.    INTRODUCTION

Defendant/counterclaim plaintiff Avalara, Inc. is a leading provider of web-based corporate tax filing services.  On November 2014, Avalara entered into a Reseller Agreement ("Agreement") with plaintiff/counterclaim defendant TechAtlantis, Inc. ("TA") under which TA provided the technical infrastructure and services for web-based preparation and filing of IRS Form 1099s (and other forms) on behalf of customers, and Avalara provided the branding and other marketing of that service.  The service was called "Avalara1099."

Under the Agreement, TA directly received, processed and stored relevant data from Avalara1099 customers, and prepared forms from that data for web-based filing with the IRS. The Agreement explicitly provided that the data received from customers, as well as the data and forms generated by TA, was the property of Avalara and each respective customer, and not the property of TA.  It further provided that when the Agreement terminated, after a six-month Wind-Down Period TA would return all of that data to Avalara.

TA terminated the Agreement effective March 31, 2016 and the Wind-Down Period ended on September 30, 2016.  Since then it has refused to return the data the Agreement plainly obligates it to return.  TA's retention of the data has left Avalara unable to effectively respond to demands from Avalara1099 customers for access to that data, which customers need to prepare additional tax filings and to respond to IRS audits.  In addition TA has refused a direct request from the largest Avalara1099 customer—H&R Block—for the return of its data, which it needs to serve its own taxpayer clients.

By this motion Avalara seeks to stop the prejudice that is being suffered and will continue to be suffered by these innocent third parties—the Avalara1099 customers—by virtue of TA's intransigence.  Avalara and TA are in a separate dispute over TA's grossly deficient

AVALARA'S MOTION FOR ORDER TO SHOW
CAUSE OR IN THE ALTERNATIVE FOR
PRELIMINARY INJUNCTION- 2
No. 2:16-cv-01325-RAJ

performance of its technical obligations during the term of the Agreement, and over how TA was to be compensated for certain services rendered. But that dispute can and should be severed from the issue of innocent third-parties' access to their important tax filing information. This Court should put an end to this unnecessary and mounting collateral damage by ordering TA to return the data to Avalara, as the Agreement plainly requires, or in the alternative to each respective customer. The remainder of the parties' dispute can then be resolved—without undue prejudice and irreparable harm to innocent third parties—in the normal course of this lawsuit.[1]

## II.   RELEVANT FACTS

**A.   Avalara and TA entered an Agreement to provide web-based IRS form preparation and filing services to business customers.**

Avalara is a leading provider of cloud-based services that automate compliance with government tax reporting. Declaration of Marshal Kushniruk ("Kushniruk Decl."), ¶ 2. In 2014, Avalara sought to license technology from a third party that would allow it to provide its customers with an Avalara-branded service for preparing and filing IRS Form-1099s ("Avalara1099"). *Id.*, ¶ 3. Generally speaking, Form-1099 forms (of which there are a number of varieties) are used for reporting various types of income other than wages, salaries and tips. Customers of Avalara1099 could also submit other forms in addition to 1099s.

In early 2014, Avalara became aware of TA, which represents itself as a provider of "IRS-approved cloud-based tax solutions." *Id.*, ¶ 4 & Ex. A at 1 (Recital B). Among other things, TA operates a web-based service, which it markets, among other branding, as "Tax1099." That service "solicits IRS W-9 information; imports payment data through both file import and

---

[1] The parties were unable to resolve this dispute through the meet-and-confer process. Declaration of Michael Brown ("Brown Decl."), ¶ 2.

AVALARA'S MOTION FOR ORDER TO SHOW
CAUSE OR IN THE ALTERNATIVE FOR
PRELIMINARY INJUNCTION- 3
No. 2:16-cv-01325-RAJ

**GORDON TILDEN THOMAS & CORDELL** LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

custom integrations; and manages the creation, validation, filing and distribution of completed IRS 1099 forms." *Id.*

Avalara and TA entered into a Reseller Agreement ("Agreement"), dated and effective November 24, 2014. *Id.*, Ex. A. Under the Agreement TA provided the technical service and infrastructure, while Avalara provided the branding and marketing to its current customers as well as potential new customers. *See generally id.* Pursuant to the Agreement, TA agreed to create, host, operate and maintain Avalara1099, which would collect and processes taxpayer information, and manage the creation, validation, filing and distribution of completed IRS 1099 forms, as well as other IRS forms. The Customer Data together with the data and forms that TA generated therefrom are referred to collectively in the Agreement as the "AVA Data." *Id.* at § 1.6.

**B.     TA repeatedly breached its obligations under the Agreement by providing faulty services, and then terminated the Agreement and breached its obligation to return the AVA Data to Avalara and the respective customers.**

From the outset, Avalara became aware of many problems with TA's management of the Avalara1099 service, and received numerous complaints from Avalara1099 customers regarding inaccurate filings, late filings, and improper disclosure of confidential taxpayer information. Kushniruk Decl., ¶5. Avalara was required to take extensive remedial actions on behalf of Avalara1099 customers, and such remedial actions continue to this day. *Id.*, ¶ 6. Avalara made TA aware of these problems but TA failed to remedy them. *Id.* ¶ 7.

On January 26, 2016, in the midst of Avalara having to deal with the repercussions of the deficient Avalara1099 service provided by TA, TA terminated the Agreement. Dkt. 1, ¶ 12. Soon afterwards an Avalara customer who had experienced significant problems with Avalara1099 (H&R Block, a large provider of tax filing services to taxpayers) made demands to

AVALARA'S MOTION FOR ORDER TO SHOW
CAUSE OR IN THE ALTERNATIVE FOR
PRELIMINARY INJUNCTION- 4
No. 2:16-cv-01325-RAJ

TA for the return of its data, including data for individual taxpayers, all of which is in the possession of TA.  Declaration of Allison Beckwith ("Beckwith Decl."), ¶ 3.  TA refused.  *Id.*  TA has also refused Avalara's demands that it return all AVA Data to Avalara under section 10.4 of the Agreement.[2]  Kushniruk Decl., ¶ 13; Brown Decl., Ex. A.  That refusal means that Avalara cannot provide its customers with information they urgently need to respond to IRS audits and meet filing deadlines.  Kushniruk Decl., ¶ 2.

In refusing these demands TA breached two obligations under the Agreement.  Section 1.6 defines "AVA Data" as "all data created, or otherwise stored and maintained in," Avalara 1099.  *Id.*, Ex. A at § 1.6.  Section 7.3 of the Agreement provides that the "AVA Data shall be deemed AVA's Confidential Information."  *Id.* at § 7.3.  Section 10.4 of the Agreement provides that, "[f]ollowing the Wind-Down Period, each Party ***shall promptly return . . . to the other party all Confidential Information***."  *Id.*, at §10.4 (emphasis added).[3]  Accordingly, the plain language of the Agreement unequivocally required TA to return to Avalara "all data created, or otherwise stored and maintained in," Avalara 1099.  And it made clear that the parties did not intend that TA would have ***any*** rights in the AVA Data once the Wind-Down Period expired.  But despite Avalara's repeated demands, TA refused, and continues to refuse, to comply with this important contractual obligation.

In addition to making Avalara the owner of all AVA Data (for all customers of Avalara1099), Section 7.3 of the Agreement provides that each customer owns the AVA Data pertaining to its own tax filings.  *Id.*, § 7.3 ("AVA (***or the respective AVA Customer***) retains all ownership rights to the AVA Data . . .") (emphasis added).  But as noted above, when H&R

---

[2]  TA provided some of the AVA Data in the Spring of 2016, but nowhere near all of it.
[3]  The Wind-Down Period was the six-month period following the Termination of the Agreement on March 31, 2016, and ended on September 30, 2016.  *Id.*, § 10.3.

AVALARA'S MOTION FOR ORDER TO SHOW
CAUSE OR IN THE ALTERNATIVE FOR
PRELIMINARY INJUNCTION- 5
No. 2:16-cv-01325-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Block requested that TA return its data, TA refused, claiming that it required too much work and expense for it to comply.  That refusal has placed H&R Block in the position of not having access to critical client information for purposes of making tax filings or responding to IRA audits.  Beckwith Decl., ¶¶ 5, 7.  Indeed, on at least six occasions (and counting) since the end of the Wind-Down Period, H&R Block has been hamstrung in its ability to respond to client audits, causing or threatening to cause substantial prejudice to innocent third party taxpayers as well as to H&R Block.  *Id.*

### III.      EVIDENCE

Avalara relies on the declarations of Marshal Kushniruk, Allison Beckwith and Michael Brown, filed herewith.

### IV.      ARGUMENT

**A.    Avalara is entitled to possession of the AVA Data under Washington's replevin statute because it owns that data and TA is withholding it in clear violation of the Agreement.**

#### 1.      Washington's Replevin Statute

RCW 7.64.010 provides that "[t]he plaintiff in an action to recover the possession of personal property may claim and obtain the immediate delivery of such property, after a hearing, as provided in this chapter."[4]  RCW 7.64.020 provides that, "[a]t the time of filing the complaint or any time thereafter, the plaintiff may apply to the judge . . . to issue an order directing the defendant to appear and show cause why an order putting the plaintiff in immediate possession of the personal property should not be issued."

---

[4]  "Personal property" is defined as property "other than real property consisting in general of things temporary or movable including intangible property."  *Webster's Third New International Dictionary* (2002).  "Property" is "something that is or may be owned or possessed."  *Id.*  The AVA Data is therefore "personal property" within the meaning of RCW 7.64.010, because it is an intangible that is and can be owned (it is owned by Avalara) and possessed (it is currently possessed by TechAtlantis).

AVALARA'S MOTION FOR ORDER TO SHOW
CASE OR IN THE ALTERNATIVE FOR
PRELIMINARY INJUNCTION- 6
No. 2:16-cv-01325-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3        If the plaintiff establishes that it is the owner of the property and that the property is
4
5   being wrongfully withheld by the defendant, the court "may issue a [temporary] order awarding
6
7   possession of the property to the plaintiff . . .," subject to a requirement that the plaintiff supply a
8
9   bond.  RCW 7.64.035(1).  RCW 7.64.010 *et seq.* has been applied in federal courts in
10
11  Washington exercising diversity jurisdiction.  *See*, *e.g.*, *Alliance Shippers, Inc. v. Always*
12
13  *Transport, Inc.*, 511 Fed. Appx. 678, 679 (9th Cir. 2013); *see also In re Courson*, 409 B.R. 516,
14
15  530 (E.D. Wash. 2009) (applying replevin statute in bankruptcy proceedings).  RCW 7.64.035(3)
16
17  further provides that the Court may enter final judgment regarding possession of the property and
18
19  award fees and costs where the party opposing the motion for an order of possession fails to raise
20
21  a triable issue of fact with regard to its entitlement to retain possession.
22
23          **2.      Avalara owns the AVA Data and TA is wrongfully withholding it.**
24
25          Under Washington law "[t]he touchstone of contract interpretation is the parties' intent,"
26
27  and that intent is determined from the "reasonable meaning of the words used."  *RSD AAP*, *LLC*
28
29  *v. Alyeska Ocean, Inc.*, 190 Wn. App. 305, 315 (2015) (quotations omitted).  Section 1.6 of the
30
31  Agreement defines "AVA Data" very broadly as "all data created, or otherwise stored and
32
33  maintained in," Avalara 1099.  That includes all information that TA received from Avalara1099
34
35  customers, as well as all data that TA generated with regard to those customers.  And § 7.3
36
37  provides that the "AVA Data shall be deemed *AVA's* Confidential Information."  *Id.* at § 7.3.
38
39  (emphasis added).  Accordingly, there is no question that the parties intended that Avalara would
40
41  own all data created, stored or maintained in Avalara1099.
42
43          Nor is there any question that the parties intended to impose on TA the obligation to
44
45  return the AVA Data to Avalara once the Wind-Down Period expired on September 30, 2016.

    Section 10.4 of the Agreement plainly states that, "[f]ollowing the Wind Down period, each

AVALARA'S MOTION FOR ORDER TO SHOW
CASE OR IN THE ALTERNATIVE FOR
PRELIMINARY INJUNCTION- 7
No. 2:16-cv-01325-RAJ

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

Party *shall promptly return . . . to the other party all Confidential Information*." *Id.*, § 10.4 (emphasis added).

TA has refused Avalara's demands that it return the AVA Data to Avalara, despite acknowledging that the Wind-Down period expired on September 30, 2016.  Because Avalara is the rightful owner of the AVA Data and that data is being wrongfully withheld by TA (which has *no* ownership rights therein), Avalara is entitled to an order "awarding possession" of the AVA Data to Avalara.  RCW 7.64.035.  Further, because TA cannot raise a triable issue as to the ownership of the AVA Data or who has a right to possess it, the Court should enter final judgment regarding Avalara's entitlement to the return of the AVA Data, and award Avalara its attorney's fees and costs reasonably incurred in recovering possession of the AVA Data, including without limitation those costs and fees incurred in bringing this motion.

**B.      Preliminary Injunction**

A preliminary injunction allows the Court to adjudicate a potentially meritorious claim while protecting the movant from irreparable harm it might suffer in the interim.  *See Textile Unlimited, Inc. v. A. BMH and Co. Inc.*, 240 F.3d 781, 786 (9th Cir. 2001).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).  These considerations are balanced against one another, such that a movant who makes a strong showing of irreparable harm may qualify for a preliminary injunction despite a weaker showing of likelihood of success, and a movant who makes a strong showing on the merits is

AVALARA'S MOTION FOR ORDER TO SHOW
CAUSE OR IN THE ALTERNATIVE FOR
PRELIMINARY INJUNCTION- 8
No. 2:16-cv-01325-RAJ

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

entitled to a preliminary injunction despite a lesser showing of irreparable harm.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).[5]

As explained below, Avalara is entitled to a preliminary injunction ordering TA to return the AVA Data to Avalara or alternatively to each respective Avalara1099 customer.

**1. Avalara is very likely to succeed on the merits of its claim for an order requiring TA to return the AVA Data to Avalara and/or the respective customers.**

**a. Avalara will succeed on the merits of its replevin claim.**

As explained above, under the plain language of the Agreement Avalara is the owner of the AVA Data, and TA is wrongfully withholding it because it was obligated to return it to Avalara "promptly" after September 30, 2016.  As such, Avalara is almost certain to prevail on its claim for an order granting it possession of the AVA Data under RCW 7.64.010 *et seq.*

**b. Avalara will likely prevail on its claim for an order directing TA to return AVA Data to the Customers.**

In addition to making Avalara the owner of all AVA Data (for all customers of Avalara1099), Section 7.3 of the Agreement provides that each customer "retains all ownership rights" in the AVA Data pertaining to its own tax filings.  Kushniruk Decl., Ex. A at § 7.3.  The largest Avalara1099 customer, H&R Block, has demanded the return of its AVA Data.  TA refused that demand as well, claiming that it required too much work to comply.  Beckwith Decl., ¶ 3.

But "expense" is no excuse for TA's retention of data that the customers—and not TA— own.  *Carroll Constr. Co. v. Smith*, 37 Wn2d. 322, 334 (1950) ("unusual or unexpected expense"

---

[5]  This Court may issue a preliminary injunction in this diversity case so long as preliminary relief is available under applicable state law.  *Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 647 (9th Cir. 1988).  Such relief is available under Washington law.  *See* RCW 7.40.020 (preliminary injunction); RCW 7.64.010 (preliminary relief for return of property wrongfully withheld).

AVALARA'S MOTION FOR ORDER TO SHOW
CAUSE OR IN THE ALTERNATIVE FOR
PRELIMINARY INJUNCTION- 9
No. 2:16-cv-01325-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

does not excuse a party's performance of contract obligations).  This is especially true where, as here, customers are suffering substantial prejudice by not having immediate access to that data to prepare tax filings and, more importantly, to respond to IRS audits.  Indeed, on at least six occasions (and counting) H&R Block clients have needed immediate access to tax filing information contained in Avalara1099 in order to respond to an IRS audit, but have not had such access.  Beckwith Decl., ¶¶ 5, 7.[6]

**C.    Avalara and innocent third parties suffer mounting irreparable harm every day TA wrongfully retains the AVA Data.**

Avalara1099 customers need immediate access to their data so they can meet filing deadlines and respond to IRS audits, some of which appear to have been triggered by TA's errors.  Kushniruk Decl., ¶ 8.  These customers are entirely innocent third parties and only want fast and reliable access to the tax-related information that they provided to TA and that TA created on their behalf (and stored in Avalara1099).  Avalara's main concern in bringing this motion is to prevent further irreparable harm to these innocent third parties; indeed it will be satisfied with either an order requiring TA to return all AVA Data to Avalara *or* an order requiring it to return the respective AVA Data to each customer.  Either way, the harm to these third parties will stop mounting and the remainder of this dispute between TA and Avalara— which would then be only a dispute about money between the two parties to the Agreement—can proceed through litigation.

---

[6]  Avalara may sue to enforce the interests of these customers, because the parties clearly contemplated that the Agreement protect the rights of those customers with respect to the AVA Data.  Fed. R. Civ. P. 17(a)(1)(F) ("The following may sue in their own names without joining the person for whose benefit the action is brought . . . (F) a party with whom or in whose name a contract has been made for another's benefit.")  It also may sue because it is being directly harmed by TA's refusal to return customer data; customers are making the same demands to Avalara (and Avalara has no way to comply because of TA's refusal to return the AVA Data to it), and Avalara is suffering substantial harm to its own business interests by virtue of customers being denied access to their own data.  *See District Title v. Warren*, 118 F. Supp.3d 249, 251 (D. D.C. 2015); Kushniruk Decl., ¶ 9.

AVALARA'S MOTION FOR ORDER TO SHOW
CAUSE OR IN THE ALTERNATIVE FOR
PRELIMINARY INJUNCTION- 10
No. 2:16-cv-01325-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3      In addition, however, Avalara is suffering irreparable harm to its business relationships
4
5  and reputation.  *Id.*, ¶ 9.  Avalara is in the business of facilitating tax filings for its customers.  As
6
7  such it is critical that those customers receive what they reasonably expected to receive when
8
9  they signed on for Avalara1099, including reliable access to their customer data notwithstanding
10
11 the termination of a contract between Avalara and one of its partners like TA.  *Id.*, ¶ 10; *Herb*
12
13 *Reed Enters. LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (damage to
14
15 business reputation and goodwill can constitute irreparable harm).

**D.     TA will suffer no harm whatsoever from being compelled to return AVA Data that
        it has no right to possess and that it is contractually required to return.**

In sharp contrast to the harm being suffered by affected taxpayers, tax preparers such as

H&R Block, and Avalara, TA will suffer *no* harm whatsoever by being forced to comply with its

obligation to return the AVA Data to Avalara and/or the respective customers.  It has no

legitimate need for that data, as evidenced by the explicit requirement that it return such data at

the end of the Wind-Down Period.  Kushniruk Decl, Ex. A at § 10.4.  And any expense that it

will bear is an expense it explicitly agreed to undertake when it entered the Agreement and

accepted the benefits thereunder.

**E.     The public interest will be served by restoring the AVA Data to the customers who
        own it and who need it to prepare mandatory tax filings and respond to IRS audits.**

The public interest weighs heavily in favor of Avalara1099 customers having reliable and

quick access to the AVA Data so they can prepare tax filings and respond to IRS audits as they

arise (and customers have no way to know when they might arise).  *See U.S. v. Tanner*, 2007 WL

1287898 at *3 (W.D. Wash. April 30, 2007) (granting injunction because, *inter alia*, "[t]he

public has an interest . . . in the fair and effective administration of the federal tax laws.");

*Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (noting the

AVALARA'S MOTION FOR ORDER TO SHOW
CASE OR IN THE ALTERNATIVE FOR
PRELIMINARY INJUNCTION- 11
No. 2:16-cv-01325-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

public interest in ensuring that taxpayers file "complete and accurate returns"). That important interest will be well served by an order requiring that the AVA Data be returned to Avalara or to the respective customers.

**F.     The Court should not require a bond because Avalara is only seeking to enforce an obligation that TA voluntarily took on.**

The Court may waive the Rule 65 bond requirement where it is very unlikely that a preliminary injunction simply ordering a party to comply with a clear contractual obligation will be followed later by a contrary final judgment. *Eastman Kodak Co. v. Collins Ink Corp.*, 821 F. Supp.2d 582, 589-90 (W.D. N.Y. 2011). No bond should be required here because all Avalara seeks is an order that TA return the AVA Data in its possession, as it is plainly required to do under the Agreement. *Id.*

## V.     CONCLUSION

There is no question as to who is the rightful owner of the AVA Data. By this motion Avalara seeks primarily to protect the critical interests of innocent third parties who find themselves caught up in this dispute by no fault of their own. TA has the AVA Data, has no property right in that data, has a clear contractual obligation to return that data, and is causing (and risking further) substantial harm to these third party customers and to Avalara by refusing to discharge that obligation. For these reasons Avalara respectfully requests that the Court enter an order requiring TA to return the AVA Data either to Avalara or to the respective customers.

AVALARA'S MOTION FOR ORDER TO SHOW
CAUSE OR IN THE ALTERNATIVE FOR
PRELIMINARY INJUNCTION- 12
No. 2:16-cv-01325-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

DATED this 15th day of December, 2016.

**GORDON TILDEN THOMAS & CORDELL** LLP
Attorneys for Defendant Avalara, Inc.


By     *s/Michael P. Brown*
Jeffrey M. Thomas, WSBA #21175
Michael P. Brown, WSBA #45618
1001 Fourth Avenue, Suite 4000
Seattle, Washington 98154
Telephone:  (206) 467-6477
Facsimile:  (206) 467-6292
Email:  jthomas@gordontilden.com
Email:  mbrown@gordontilden.com

AVALARA'S MOTION FOR ORDER TO SHOW
CAUSE OR IN THE ALTERNATIVE FOR
PRELIMINARY INJUNCTION- 13
No. 2:16-cv-01325-RAJ

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Michelle Peterson
> Michelle Peterson Law, PLLC
> 1420 Fifth Avenue, Suite 2200
> Seattle, WA 98101
> michelle@michellepetersonlaw.com
>
> Suzanne G. Clark
> Clark Law Firm, PLLC
> 244 W. Dickson St., Suite 201
> P.O. Box 4248
> Fayetteville, AR 72702-4248
> sclark@clark-firm.com

DATED this 15th day of December, 2016.


 _s/ Jeffrey M. Thomas_
Jeffrey M. Thomas, WSBA #21175

AVALARA'S MOTION FOR ORDER TO SHOW
CAUSE OR IN THE ALTERNATIVE FOR
PRELIMINARY INJUNCTION- 14
No. 2:16-cv-01325-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292