THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ZENWORK, INC. f/k/a TECHATLANTIS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AVALARA, INC., <br><br> Defendant. | Case No. C16-1325 RAJ <br><br> **ED PRATT DECLARATION IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ORDER TO SHOW CAUSE OR IN THE ALTERNATIVE FOR PRELMINARY INJUNCTION** <br><br> NOTED: JANUARY 6, 2017 |

I, Ed Pratt, declare as follows:

1. I am the Vice President of Business Development for Zenwork, Inc. f/k/a TechAtlantis, Inc.

2. In 1999 through 2016, Zenwork Inc. was known as TechAtlantis, Inc., a technology consulting firm. The company specializes in Tax Compliance-related technology applications that simplify the e-filing and overall tax compliance processes. As specific to this case, one product, Tax1099, utilizes Tech Atlantis's proprietary technology and is an IRS-approved E-file provider for 1099 and other tax forms.

3. I have personal knowledge regarding contract negotiations between Avalara and TechAtlantis and the signing of the Reseller Agreement, the parties' performance under the

PRATT DECLARATION IN SUPPORT
OF OPPOSITION TO MOTION FOR ORDER
TO SHOW CAUSE - 1

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

Agreement, the customer service issues alleged, and Defendant's breaches of the Agreement.

4. In April 2014, Marshal Kushniruk, Executive Vice President for Global Business Development for Avalara, reached out to me through an intermediary at Bill.com to determine whether we would be interested in partnering with Avalara on 1099 software.

5. The initial discussions with Mr. Kushniruk focused on whether Avalara wanted to build, buy or partner with TechAtlantis. Avalara's clear preference was to buy the technology. TechAtlantis was only interested in a partnership arrangement. TechAtlantis was not interested in selling its code to Avalara for the 1099 product.

6. After some preliminary discussions and a site visit to Avalara's offices at Bainbridge Island, in August 2014, the parties negotiated the Reseller Agreement that is attached as Exhibit A to the Kushniruk Declaration (Dkt. # 19). The Reseller Agreement was signed on November 24, 2014 and TechAtlantis had already begun the process of building the Avalara1099 site at its own cost.

7. Avalara1099 was a private-labeled version of Tech Atlantis's Tax1099 product. The Reseller Agreement required that Avalara1099 be entirely separate from Tax1099 and that Avalara1099 would "make the AVA Data available to AVA on a real time basis." Kushniruk Decl., Ex. A, ¶ 3.1. At all times during the course of the Agreement, as required by the Agreement, Avalara has had real-time access to the AVA Data. No AVA data was ever withheld from Avalara.

8. With the private-labeled Avalara1099 product, TechAtlantis hosted and operated website and agreed to service Avalara's customers through the self-service website. Avalara's customers would access the website, upload their data and file with the IRS. Each customer has access to only their data. Avalara has the ability to access all of its customers' data on the

PRATT DECLARATION IN SUPPORT
OF OPPOSITION TO MOTION FOR ORDER
TO SHOW CAUSE - 2

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

Avalara1099 system. Due to security protocols, each customer's data is stored separate from another customers. There is purposefully no mechanism for combining all of the data uploaded by the Avalara customers to one file.

9. In order for the customer data to be downloaded, either Avalara or the customer must access the account and download the forms and data that they need. The six-month Wind-Down Period was part of the Reseller agreement so that there would be sufficient time for each customer or Avalara to access and download the data. During this period, TechAtlantis and Avalara agreed to "ensure that these AVA Customers are able to retrieve their data from Avalara1099." Kushniruk Decl., Ex. A, ¶ 10.3.3.

10. The parties anticipated that customer problems and support issues would arise, which the Reseller Agreement specifically addressed. Kushniruk Decl., Ex. A, § 6 and the referenced Exhibit B.

11. Sometime in March of 2015, we had conversations with Avalara regarding H&R Block, a prospective client of Avalara for Avalara1099. H&R Block ("HRB") was not a customer when the parties entered into the Reseller Agreement. Initial conversations centered on HRB's Request for Proposal, which included a lengthy security document. At some point in September of 2015, Avalara and HRB reached an agreement. Tech Atlantis is not a party to the contract with HRB and was never provided a copy of the Avalara's contract with HRB.

12. Each HRB office was treated as a separate client based on the requirement to keep all HRB offices separated for billing and security purposes. The 2015 tax filing season saw much higher volume as a result of the HRB contract and a few other larger groups that Avalara had signed. The service experience was largely the same as the prior year, but there were more requests.

PRATT DECLARATION IN SUPPORT
OF OPPOSITION TO MOTION FOR ORDER
TO SHOW CAUSE - 3

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

13.     From the beginning of the relationship, Avalara was slow to pay TechAtlantis's invoices. The last payment that TechAtlantis received from Avalara was in September 2015. By January 2016, TechAtlantis could no longer continue to service Avalara's customers without payment. Throughout the term of the Reseller Agreement, of more than $900,000 invoiced to Avalara, Avalara had paid only $31,208.68.

14.     On January 26, 2016, I sent an email to Avalara on behalf of TechAtlantis notifying it that we were terminating the Reseller Agreement. Attached as Exhibit A is a true and correct copy of the correspondence terminating the agreement with Avalara. I spoke to Tim Teeter at Avalara regarding the termination. I explained that we would need to renegotiate the terms of the agreement to provide prepayment of fees that TechAtlantis incurred on behalf of Avalara's customers. For example, postage and customer's e-File fees were advanced by TechAtlantis on behalf of Avalara's customers. The volume driven by the HRB business made this an unreasonable burden, since Avalara did not promptly reimburse these amounts.

15.     The termination notice for nonpayment triggered the Post-Termination Wind-Down Period in paragraphs 10.3 through 10.3.7 of the Reseller Agreement. The parties understood that upon termination of the Agreement, Avalara and its customers would need time to download their information before the site was shut down. In May 2016, I notified Avalara that, during the Wind-Down Period under the terms of the Agreement, we would provide access for customers to access and download their existing forms. I also explained that during this time, the customers could no longer file new forms but could still access their information to download copies of their filings or see their accepted status from the IRS/SSA. The Avalara1099 site remained in this state until the end of the Wind-Down period on September 30, 2016.

PRATT DECLARATION IN SUPPORT
OF OPPOSITION TO MOTION FOR ORDER
TO SHOW CAUSE - 4

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

16. The Reseller Agreement required that, during the Wind-Down Period, the parties would continue to pay any amounts owed. Kushniruk Decl., Ex. A, ¶ 10.3.7. Avalara paid <u>nothing</u> at any time after September of 2015 through the expiration of the Wind-Down Period on September 30, 2016.

17. I have no information regarding how or if Avalara notified its customers that the Avalara1099 site would no longer be available after September 30, 2016. However, during the Wind-down Period, it was expected that Avalara would download the information, records, or documents it needed once the Wind-Down Period ended and the site was shut down.

18. In July of 2016, I received letter from the attorney for HRB, claiming that Tech Atlantis was holding HRB data "hostage" and demanding that data be "returned" to HRB in the format specified by HRB. A true and correct copy of the correspondence from HRB is attached as Exhibit "B." Our attorney responded explaining our position that nothing was being held hostage from Avalara or its customers and that the format being demanded was not within the terms of the Reseller Agreement. Avalara has continued to make demands for the information in the format demanded by HRB through and after the Wind-down Period, when it had full access to all AVA data.

19. In October 2016, through counsel for Avalara threatening to file for an injunction, I learned that Avalara had not downloaded the customer data information during the six-month Wind-Down Period and, it appeared, it also did not inform its clients to download the customer data during the Wind-Down Period. To accommodate Avalara1099's customers' need to access, view and download data from the Avalara1099 site, which at this point had been shut down by TechAtlantis, TechAtlantis agreed to startup the Avalara1099 site and allow Avalara's customers to access the site to download their data.

PRATT DECLARATION IN SUPPORT
OF OPPOSITION TO MOTION FOR ORDER
TO SHOW CAUSE - 5

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

20. The thirty-day access period expired on November 20, 2016. Avalara apparently failed again to perform it due diligence and continues to make further demands, resulting in its requests to the Court.

21. Tech Atlantis is a small business relative to both Avalara and HRB. We must be able to focus on our own business during this tax season. I do not know what promises Avalara made to HRB with regard to its ability to provide information in a given format, but Tech Atlantis is not a party to any such agreement.

22. Tech Atlantis has already performed significant work it was not obligated to perform in order to accommodate both Avalara and HRB. The demand that Avalara is asking the Court to impose on Tech Atlantis would place our entire business at risk because it would require significant new development efforts at extreme time and expense, during the busiest time of the year for tax season.

DATED: January 3, 2017

_____
Ed Pratt

PRATT DECLARATION IN SUPPORT
OF OPPOSITION TO MOTION FOR ORDER
TO SHOW CAUSE - 6

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2017, I electronically sent the foregoing to the following at the email designated below:

Michael P Brown
GORDON TILDEN THOMAS & CORDELL LLP
1001 4TH AVE
STE 4000
SEATTLE, WA 98154
206-467-6477
mbrown@gordontilden.com

Jeffrey M Thomas
GORDON TILDEN THOMAS & CORDELL LLP
1001 4TH AVE
STE 4000
SEATTLE, WA 98154
206-467-6477
jthomas@gordontilden.com

Dated: This 3rd day of January 2017.

/s/ Michelle Peterson
Michelle Peterson

PRATT DECLARATION IN SUPPORT
OF OPPOSITION TO MOTION FOR ORDER
TO SHOW CAUSE - 7

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

PRATT DECLARATION

EXHIBIT A



Ed -TechAtlantis <ed@techatlantis.com>

# Tech Atlantis - Avalara Contract

**Ed -TechAtlantis** <ed@techatlantis.com>  Tue, Jan 26, 2016 at 10:52 AM
To: Tim Teeter <tim.teeter@avalara.com>
Cc: Michael Hackett <michael.hackett@avalara.com>
Bcc: "sanjeev@techatlantis.com" <sanjeev@techatlantis.com>

Tim,

Per our conversation and the contract, this email notifies Avalara that Tech Atlantis is terminating our existing contract for the purpose of renegotiating certain items. Based on section 10.1 of the contract, this seems like the simplest path to re-open the negotiations.

If you feel you need a mailed notification of this termination as well, let me know.

Thanks,

Ed Pratt
Vice President of Business Development
Tech Atlantis, Inc
Email: ed@techatlantis.com
Office: 479-935-1722
Cell: 443-379-7227

PRATT DECLARATION

EXHIBIT B


# BERKOWITZOLIVER LLP

Anthony J. Durone
adurone@berkowitzoliver.com
DD: (816) 627-0217

July 8, 2016

**VIA E-MAIL AND U.S. MAIL**
Mr. Ed Pratt
Vice President of Business Development
Tech Atlantis, Inc.
ed@techatlantis.com
320 N. Rollston Ave., Suite #103-B
Fayetteville, AR 72701

<center>Re: Return of H&R Block Client Data</center>

Dear Mr. Pratt:

  I represent HRB Tax Group, Inc. ("H&R Block"), and am writing in regards to the disposition of H&R Block client data ("Client Data") that is currently in the possession of Tech Atlantis, Inc. ("Tech Atlantis"), a subcontractor of Avalara, Inc. ("Avalara"). This Client Data was provided to Tech Atlantis and Avalara pursuant to the Avalara Services Agreement dated October 15, 2015 (the "Agreement"), and is now being improperly and unlawfully withheld from return to H&R Block.

  It is our understanding that Tech Atlantis is currently in possession of the Client Data and refuses to return it to H&R Block due to a dispute with Avalara. Any such dispute does not give either company the right to hold the Client Data hostage and refuse the return of the Client Data, which is the property of H&R Block, its affiliates, franchisees, and/or clients and is only licensed to Avalara and its subcontractors. Therefore, Tech Atlantis cannot withhold this data and must return it at once.

  H&R Block therefore demands the return of any and all of the Client Data in the possession of Tech Atlantis, including, but not limited to, any H&R Block Client Data associated with IRS Form 1099, Form W-2, or other similar forms. Specifically, and without limitation, H&R Block demands the following Client Data be returned immediately in the specified format:

  1. A .CSV file of all H&R Block Client Data, including each of the following categories of information:

- Reference ID
- User That Created Form
- Office ID

# BERKOWITZOLIVER LLP

Mr. Ed Pratt
July 8, 2016
Page 2

- Payer/Employer Identification Number
- Payer Name
- Payer Address
- Recipient Identification Number
- Recipient Name
- Recipient Address
- Form Name
- If Void or Corrected Form
- All Box Entries on All Forms (e.g., Boxes 1-18 on a 1099-MISC)
- E-file Submission Dates
- Federal E-file Identification/Reference Number
- State E-file Identification/Reference Number
- Form Mailed to Recipient (Yes/No)
- Dates Form Mailed to Recipient (Each Time It Was Mailed)
- TIN Match (Yes/No)

2. PDFs of all forms created by Avalara and/or Tech Atlantis using any H&R Block Client Data.

Time is very much of the essence, as H&R Block requires this Client Data to continue serving its clients. As you are aware, numerous issues have arisen in regards to the performance of the Agreement, including, without limitation, improperly formatted W-2 forms, W-2 forms mailed with visible confidential information, mailing delays that resulted in missed deadlines, and tax forms sent to incorrect recipients. As a result of these issues, H&R Block has incurred significant costs and suffered irreparable damage to its client relationships. This damage is only compounded the longer H&R Block's Client Data is unreasonably withheld.

Thus, it is critical that Tech Atlantis return H&R Block's Client Data no later than **July 15, 2016**. If Tech Atlantis does not return the Client Data by this date, H&R Block will be forced to pursue other avenues to obtain its property, including without limitation, any and all available legal or equitable remedies against Tech Atlantis.

Please be advised that this letter does not purport to be a complete statement of the facts or the law and is without prejudice to H&R Block's legal and equitable rights against Tech Atlantis, all of which are expressly reserved.

# BERKOWITZOLIVER LLP

Mr. Ed Pratt
July 8, 2016
Page 3

      Please call me if you have any questions. We would be happy to discuss this with you in further detail. Thank you in advance for your prompt attention to this important matter.

      Very truly yours,

      *Anthony J. Durone*

      Anthony J. Durone