THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| ZENWORK, INC. f/k/a TECHATLANTIS, INC., | ) ) ) | Case No. C16-1325 RAJ |
| Plaintiff, | ) ) ) | **SANJEEV SINGH DECLARATION IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S** |
| v. | ) ) ) | **MOTION FOR ORDER TO SHOW CAUSE OR IN THE ALTERNATIVE FOR PRELMINARY INJUNCTION** |
| AVALARA, INC., | ) ) ) | |
| Defendant. | ) ) ) | NOTED: JANUARY 6, 2017 |

I, Sanjeev Singh, declare as follows:

1.      I am the Founder and Chief Executive Officer for Zenwork, Inc. f/k/a TechAtlantis, Inc.

2.      I have reviewed the Declaration of Ed Pratt, Vice President of Business Development for Tech Atlantis, and affirm his representations as to the formation and parties' performance of the Reseller Agreement with Avalara Inc.

3.      Since the filing of our lawsuit against Avalara, it appears Avalara seeks to require Tech Atlantis to comply with any and all its demands, whether or not it is within the terms of the Reseller Agreement between the parties. Avalara has refused, for well over a year, to pay Tech Atlantis the amounts it is owed, now exceeding $900,000 for work performed

SINGH DECLARATION IN SUPPORT
OF OPPOSITION TO MOTION FOR ORDER
TO SHOW CAUSE - 1

under the terms of the Agreement.  I believe we would have been justified in shutting down

Avalara's access entirely to the Avalara1099 system, but in order to avoid creating problems

for Avalara's customers, we chose not to do so.

       4.      Avalara1099 allowed Avalara customers to subscribe to Avalara's services.

Avalara1099 is a private-labeled version of Tech Atlantis' Tax1099 product, which is Tech

Atlantis proprietary technology.  Avalara1099 was hosted and supported by Tech Atlantis, but

all data loaded into the database was input by either the customer or Avalara.  Avalara had full

access to the site and had the ability to access and download any data Avalara or its customers

needed.

       5.      Avalara is demanding "return" of records that do not exist in the format they are

demanding.  Tech Atlantis literally does not have .csv files or pdfs that can be "returned" to

Avalara.  The Avalara1099 system does not store .csv files or pdf files because, given their

size, doing so would be prohibitively expensive.  The Avalara1099 system only stores the raw

data and then uses its proprietary software to collect, organize and transmit that data to the IRS

in the form requested by the customer.  It is my understanding that this is the same model that

Avalara uses for its own customers and similarly charges the customers for forms created after

the termination of the subscription agreement.  Our contract specifically says that Tech Atlantis

has no requirement to provide support after the Wind-Down Period.  Kushniruk Decl., Ex. A, ¶

7.2 ("[F]ollowing expiration of the Wind-Down Period, neither Party has an obligation to

provide any updates or ongoing support . . .").

       6.      The information loaded into Avalara1099 exists in discrete data formats, divided

into various tables, such as: Payer Data; Recipient Data; Form Data; Submission Data; TIN

Matching Data; and W-9 Data.  The Avalara1099 user interface, which is proprietary Tech

SINGH DECLARATION IN SUPPORT
OF OPPOSITION TO MOTION FOR ORDER
TO SHOW CAUSE - 2

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

Atlantis intellectual property, allows the user to create and download the forms the user needs to create and submit for tax compliance.  Avalara1099 does not save and store these forms.  It was never designed to do so and there was never a contractual requirement to do so.  The required security measures ensure that the client data is separated and there is, intentionally, no mechanism to collect data across the various customer files.

7.      The Wind-Down Period in the Reseller Agreement was specifically set at six months to allow Avalara or its customers to download whatever data, forms, or information may be needed.  The Reseller Agreement states that during the Wind-down period "AVA and Partner will ensure that these AVA Customers are able to retrieve their data from Avalara1099."  Kushniruk Decl., Ex. A, ¶ 10.3.3.  The parties understood this to be a labor-intensive process, which is why six months would be needed.  The demands being made by Avalara demonstrate that it failed entirely to perform any due diligence with regard to downloading the records it would need at the end of the Wind-Down Period.  It is now trying to impose that burden on Tech Atlantis.

8.      At the termination of the Wind-down Period, if we were not in litigation, Tech Atlantis would have destroyed the raw data stored on the site hosting Avalara1099 and would have discontinued the hosting.  This was required under the Reseller Agreement.  Kushniruk Decl., Ex. A, ¶ 10.4.  Because we are required to preserve all relevant information during this litigation, Tech Atlantis continues to incur the expense of maintaining the site, though in an idle form.  The raw data cannot be provided without the proprietary code which is the intellectual property that is the foundation of Tech Atlantis.  Without the code separating the data, it would be indecipherable.  The "data" is not what Avalara wants, it wants Avalara1099, our proprietary technology.

SINGH DECLARATION IN SUPPORT
OF OPPOSITION TO MOTION FOR ORDER
TO SHOW CAUSE - 3

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

9.    The information and HRB format that Avalara is demanding would require that Tech Atlantis develop new code and data systems to perform the work.  That is far beyond the scope of anything in the Reseller Agreement.  It would require hundreds of hours to perform the programing required to create the pdfs.  It would require hundreds of hours of additional programming to create the .csv files demanded.  Further, in order to do what is demanded, it would require dismantling the security systems that are in place to prevent customers from accessing other clients' data.

10.   The Reseller Agreement and industry standards require that all client data is kept separate to avoid the risk of exposing sensitive client information.  Kushniruk Decl., Ex. A, § 3. With the existing user interface for Avalara1099 in place, client data is kept discretely separate. The format of data that Avalara is demanding would require dismantling the security that is in place through code that has not even been developed.   The .csv files, that do not currently exist but are being demanded, could be manipulated or accidentally modified at serious risk to the security of the user information.  There are no stored pdfs in the Avalara1099 database.  I do not understand how the "return" of data could include a requirement to develop intellectual products and data systems that literally do not exist.

11.   When Avalara last threatened an injunction, in an effort to assist their customer H&R Block, we agreed to re-open and provide support for the site for 30 days so Avalara could perform the work it failed to do during the six-month Wind-Down Period.    With Avalara's history of non-payment, Tech Atlantis required payment upfront for this work.

12.   At the expiration of the 30 days, the site was shut down on November 20, 2016. Avalara then claimed it had further need for documents.  All of the requests have been for information or documents which Avalara had the access and ability to create and obtain during

SINGH DECLARATION IN SUPPORT
OF OPPOSITION TO MOTION FOR ORDER
TO SHOW CAUSE - 4

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

the 30-day term.

13.     Tech Atlantis has responded to additional requests since closing down the site on November 20, 2016, but informed Avalara through our counsel that regardless of payment, Tech Atlantis cannot respond to Avalara's random requests during the tax season beginning on January 1, 2017.  Tech Atlantis does not have the manpower to divert to perform work for Avalara, a company that already owes us over $900,000.  Avalara's non-payment has already caused serious hardship to Tech Atlantis.

14.     To comply with Avalara's demand would be at enormous expense to Tech Atlantis.  I would estimate manpower required to cost approximately $150,000.  The cost of hosting the site is variable based on the amount of data exchanged and can run from approximately $7000/month to $40,000/month.   A conservative estimate of data hosting would be approximately $100,000 to complete the work demanded.  Additionally, Tech Atlantis is not staffed to support Avalara.  Tech Atlantis had between 15 and 18 full-time-equivalent workers to support the system.  We would need to divert all of our resources from our existing businesses and opportunities and hire additional staff to perform the work.  The opportunity cost would be at least $200,000.

15.     It is absurd to believe that this is what was meant by the "return" of confidential information.  The contract defined "Confidential Information" anything each of the parties considered proprietary, including "business and technical information, source code, marketing plans, customer lists, etc.  Kushniruk Decl., Ex. A, ¶ 1.7.  This business relationship presumed that the parties would need to disclose confidential information in the course of doing business and required that it be returned or destroyed when the business relationship ended.  *Id.*, at ¶10.4.  The parties understood that the whole point of the six-month Wind-Down Period was to

SINGH DECLARATION IN SUPPORT
OF OPPOSITION TO MOTION FOR ORDER
TO SHOW CAUSE - 5

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

allow Avalara and its customers to download any and all information it may need, in various

formats, before access to the site was shut down.  That was also the point of re-opening the site

for an additional 30 days in October of this year.   Tech Atlantis never agreed, and never would

agree, to any term that would require us to spend hundreds of thousands of dollars to "return"

data.

16.     I believe Avalara's real goal is to require Tech Atlantis to turn over Avalara1099

to Avalara, which is Tech Atlantis's intellectual property. Kushniruk Decl., Ex. A, ¶ 7.1

("Partner retains all ownership and intellectual property rights in and to Avalara1099").

Avalara wanted to buy our technology, and I believe they are trying to use these proceedings to

obtain Tech Atlantis's proprietary technology or force us out of business to remove a

competitor.

17.     To require Tech Atlantis to create the records and documents demanded would

place a financial and manpower burden on Tech Atlantis that could literally cost us our

business.  Doing so creates security risks to sensitive client data, which if exposed, could create

an enormous liability risk to Zenwork/Tech Atlantis.

DATED:  January 3, 2017

_____
Sanjeev Singh

SINGH DECLARATION IN SUPPORT
OF OPPOSITION TO MOTION FOR ORDER
TO SHOW CAUSE - 6

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

1

2

## CERTIFICATE OF SERVICE

3

4     I hereby certify that on January 3, 2017, I electronically sent the foregoing to the following at the email designated below:

5     Michael P Brown
6     GORDON TILDEN THOMAS & CORDELL LLP
      1001 4TH AVE
7     STE 4000
      SEATTLE, WA 98154
8     206-467-6477
      mbrown@gordontilden.com
9
      Jeffrey M Thomas
10    GORDON TILDEN THOMAS & CORDELL LLP
      1001 4TH AVE
11    STE 4000
      SEATTLE, WA 98154
12    206-467-6477
      jthomas@gordontilden.com
13

14

15    Dated: This 3rd day of January 2017.

16                                   _/s/ Michelle Peterson_____
                                     Michelle Peterson
17

18

19

20

21

22

23

24

25

26

27

SINGH DECLARATION IN SUPPORT                          MICHELLE PETERSON LAW, PLLC
OF OPPOSITION TO MOTION FOR ORDER                      1420 FIFTH AVENUE, SUITE 2200
TO SHOW CAUSE - 7                                            SEATTLE, WA 98101