The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ZENWORK, INC. f/k/a TECH ATLANTIS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AVALARA, INC., <br><br> Defendant. | NO.  2:16-cv-01325-RAJ <br><br> AVALARA'S REPLY IN SUPPORT OF ITS MOTION FOR ORDER TO SHOW CAUSE OR IN THE ALTERNATIVE PRELIMINARY INJUNCTION |
| AVALARA, INC., <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> ZENWORK, INC. f/k/a TECH ATLANTIS, INC. d/b/a EXAKTO.COM; 1099ONLINE.COM, TAX1099.COM; EZ2290; EZIFTA; EZEXTENSION; and FBARONLINE, <br><br> Counterclaim Defendants. | |

REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE OR PRELIMINARY INJUNCTION- 1
No. 2:16-cv-01325-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## I. INTRODUCTION

In bringing this motion Avalara seeks nothing more than to compel Tech Atlantis to comply with its clear contractual obligation to return critical tax information of innocent third parties (the AVA Data) so that it can be available to those third parties when they need it to respond to IRS audits or to prepare new tax filings. Tech Atlantis has responded with arguments that are inaccurate, irrelevant, or both.

First, Tech Atlantis grossly distorts the relief Avalara seeks when it repeatedly insists what Avalara "really" wants is to force Tech Atlantis to "process" that data into particular forms and file formats before returning it to Avalara, and that this sort of processing will require a crippling amount of time and effort to complete and will pose severe data security risks. But that is not what Avalara is demanding. It needs only the data itself, as maintained by Tech Atlantis; Avalara will do the processing itself.

Second, Tech Atlantis argues that the Court should simply disregard the provision in the Reseller Agreement that explicitly requires it to return the data, because Avalara and third party customers *could have* retrieved the data themselves, pursuant to a different provision in the contract that, it contends, the parties included for that purpose. Tech Atlantis is wrong regarding the parties' intent. But more importantly Tech Atlantis' uncommunicated, unilateral belief as to that intent cannot override the unambiguous language the parties used in the contract. And courts cannot strike one provision in a contract on the grounds that the performance called for in that provision might have been obviated had the parties done something differently pursuant to another provision. The parties deliberately included *both* provisions, and the Court must enforce both as written.

REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE OR PRELIMINARY INJUNCTION- 2
No. 2:16-cv-01325-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Third, Tech Atlantis argues that Avalara has wrongfully refused to pay money owed under the Reseller Agreement. Avalara disputes the amount of money it owes to Tech Atlantis and will prove later in this litigation that Tech Atlantis's performance was woefully deficient and that it is attempting to charge Avalara thousands of times more than what is called for in the Reseller Agreement for services provided to one particular customer. But for present purposes, if this Court orders the return of the AVA Data now, the parties' dispute over money owed under the contract can be resolved later without continuing to prejudice the interests of innocent third parties who need that data.

Fourth, Tech Atlantis argues that it cannot comply with its obligation to return the AVA Data because it has inextricably intertwined it with its proprietary code. But Tech Atlantis knew from the outset that it would ultimately be required to return the AVA Data to Avalara. If it cannot do that without divulging trade secrets, that is a problem of its own making and one that cannot excuse its nonperformance.

Finally, Tech Atlantis argues that it should not be required to return the AVA Data because Avalara did not explicitly plead a cause of action for replevin. But all of the facts necessary for recovery under RCW 7.64.010 *et seq.* **have** been pled, and Tech Atlantis has been placed on clear notice that Avalara demands the return of the AVA Data and will seek preliminary injunctive relief to get it. If the Court believes that the Counterclaims should be amended to explicitly identify the statute, Avalara is happy to do that.

REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE OR PRELIMINARY INJUNCTION- 3
No. 2:16-cv-01325-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## II. ARGUMENT

**A. In responding to Avalara's motion Tech Atlantis did not address Avalara's motion for a preliminary injunction to enforce the rights of customers of Avalara1099 to a return of their respective data.**

In addition to seeking an order of possession under RCW 7.64.010 *et seq.* (the replevin statute), in its motion Avalara requested a preliminary injunction enforcing the rights of Avalara1099 customers to their respective AVA Data. *See* Dkt. 16 at 9-10. Those customers retain the ownership right in their data and Tech Atlantis is wrongfully withholding it. *Id.* Avalara explained the basis for its authority to enforce the rights of Avalara1099 customers. *Id.* at 16 n. 6. In its response Tech Atlantis addresses only the replevin claim, and does not address the second basis for a preliminary injunction. As such, the Court should conclude that Avalara is very likely to succeed on its claim for an order requiring Tech Atlantis to return the AVA Data to the respective customers.[1]

**B. Avalara is *not* demanding return of the AVA Data in a specific format requested by Avalara1099 customers.**

The crux of Tech Atlantis' response to Avalara's motion is a classic straw man argument. It insists that Avalara is *not* seeking what it clearly demands in its motion papers—the return of the AVA Data as required under the Reseller Agreement. What Avalara is "really" seeking, Tech Atlantis argues, is to force Tech Atlantis to spend $450,000 to generate new documents and files *from* the AVA Data and turn *that* over the Avalara. That is simply not the case.

During the term of the Reseller Agreement Tech Atlantis received data from Avalara1099 customers and generated outputs using that data. That is what the Reseller Agreement defines as the "AVA Data" and it is already stored on a database that Tech Atlantis controls. Avalara

---

[1] Tech Atlantis' arguments regarding the other factors involved in the preliminary injunction analysis fail as well, for the reasons discussed below.

REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE OR PRELIMINARY INJUNCTION- 4
No. 2:16-cv-01325-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

demands the return of that already-existing data. It requires that data so that it can respond when Avalara1099 customers need information for tax audits, filings *etc*. Once it has that data, it can do the work to generate forms and files—the work that Tech Atlantis claims would be crippling to its business.

The fact that Avalara is demanding only the return of existing AVA Data means that the Court can dismiss the arguments that Tech Atlantis makes in "response" to the demand that Avalara did not make:

First, Tech Atlantis argues that creating the forms and files requested by Avalara1099 customers will entail a crippling expense. That cannot be the case, since Tech Atlantis indicated in June 2016 that it could and would deliver all of the PDF forms for H & R Block (by far the largest Avalara1099 customer). Declaration of Timothy Teeter, Ex. B. But in any event Avalara is not demanding the creation of forms and files, it is demanding the return of data. Tech Atlantis does not even argue that complying with *that* demand will be onerous, and whatever expense is entailed is one it agreed to incur when it entered the Reseller Agreement.

Second, Tech Atlantis argues that the return of the data as forms and files will create "data security" risks. But there will be no data security risks if it simply returns the AVA Data in the format required by section 10.4. Declaration of Travis Ruff, ¶ 2. Indeed, if the return of the AVA Data presented a serious security risk, presumably the parties would not have included that explicit requirement in their contract.

Third, Tech Atlantis argues that Avalara is attempting to foist onto it the work required to turn the AVA Data into specific formats requested by customers. The situation is exactly the contrary: Avalara wants the data so it can do that work itself.

REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE OR PRELIMINARY INJUNCTION- 5
No. 2:16-cv-01325-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Finally, Tech Atlantis argues that another one of Avalara's "secret" intentions is to steal its intellectual property, as opposed to getting the data returned. Again, Avalara is attempting to do nothing more than enforce its clear contractual right to the return of the data. It has no interest in Tech Atlantis' intellectual property.[2]

**C.    Tech Atlantis cannot dispute that the Reseller Agreement required it to return the AVA Data "promptly" after the expiration of the Wind-Down Period on September 30, 2016.**

   **1.    Section 10.4 of the Reseller Agreement unequivocally states that Tech Atlantis "shall promptly return" the AVA Data after the Wind-Down Period.**

Section 1.6 of the Reseller Agreement defines "AVA Data" as "all data created, or otherwise stored and maintained in," Avalara 1099. Dkt. 19, Ex. A at § 1.6. Section 7.3 of the Agreement provides that the "AVA Data shall be deemed AVA's Confidential Information." *Id.* at § 7.3. Section 10.4 of the Agreement provides that, "[f]ollowing the Wind-Down Period, each Party *shall promptly return . . . to the other party all Confidential Information*." *Id.*, at §10.4 (emphasis added).[3] Accordingly, the plain language of the Agreement unequivocally required Tech Atlantis to return to Avalara "all data created, or otherwise stored and maintained in," Avalara 1099.

   **2.    Tech Atlantis cannot rely on extrinsic evidence of its own subjective intent to override the plain language of the contract.**

Tech Atlantis attempts to evade the clear obligation to return the AVA Data under section 10.4 by arguing that the "purpose" of section 10.4 was not to ensure continued access to the

---

[2] Tech Atlantis argues that the raw data would be "indecipherable" if delivered in raw format. This is a simply a pretext for not wanting to perform its obligation to return that data. Avalara is confident that if the raw data is returned in a format with descriptions of each data field, Avalara can decipher it. Balasundarum Decl., ¶ 2.
[3] The Wind-Down Period was the six-month period following the Termination of the Agreement on March 31, 2016, and ended on September 30, 2016.

REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE OR PRELIMINARY INJUNCTION- 6
No. 2:16-cv-01325-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

AVA Data after the Wind-Down Period, because that access was available under section 10.3 *during* the Wind-Down Period.  That argument fails for several reasons.

First, the obligations created by a contract are determined by examining the "reasonable meaning of the words used." *RSD AAP, LLC v. Alyeska Ocean, Inc.*, 190 Wn. App. 305, 315 (2015) (quotations and citations omitted).  "If the language is clear and unambiguous, the court must enforce the contract as written." *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn. 2d 724, 733, (1992).  "Thus, when interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used."  *Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503-04 (2005) ("We do not interpret what was intended to be written but what was written.").

It is only where a clause is ambiguous that extrinsic evidence—such as the "purpose" of a provision—is admissible to resolve the ambiguity by clarifying the meaning of "specific words and terms." *RSD AAP*, 190 Wn. App. at 315.  However, extrinsic evidence may not be used "to show an intention independent of the contract or to vary, contradict, or modify the written word." *Id.* (quotations and citations omitted).  And "extrinsic evidence of a party's subjective, unilateral, or undisclosed intent regarding the meaning of a contract's terms is inadmissible."  *Id.* (quotations and citations omitted).

There is no ambiguity in section 10.4.  The phrase "shall promptly return . . . all Confidential Information" could not be more clear.  Indeed, Tech Atlantis does not dispute that the AVA Data is part of Avalara's "Confidential Information" under the Reseller Agreement, nor does it contend that any word in section 10.4 is ambiguous.  Its argument is instead that *it* had a particular idea of the "purposes" of section 10.4 and of section 10.3, and that its idea is

REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE OR PRELIMINARY INJUNCTION- 7
No. 2:16-cv-01325-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

inconsistent with the use to which Avalara wishes to put the AVA Data once it is returned to it under section 10.4.  That is an improper attempt to use extrinsic evidence to show an intention independent of the contract and contrary to its unambiguous language.

Further, "[i]t is a fundamental precept of contract law that contracts must be interpreted in accordance with all of their terms." *Storti v. University of Washington*, 181 Wn.2d 28, 38 (2014).  And "[a]n interpretation which gives effect to all the words of a contract is favored over one which renders some of the language meaningless or ineffective." *Stevens v. Security Pac. Mortgage Corp.*, 53 Wn. App. 507, 520 (1989).  The Court must therefore reject Tech Atlantis's suggestion that it is excused from a clear obligation under section 10.4 simply because Avalara could have obtained the same benefit, in a different manner, under section 10.3.  That interpretation would read section 10.4 out of the agreement.

Finally, the "plain language" interpretation of all of the provisions of the Reseller Agreement—that Tech Atlantis had an obligation to keep the portal open for six months under section 10.3 ***and*** an obligation to "promptly return" the AVA Data thereafter under section 10.4—is the reasonable one and comports with the parties' intentions.  The purpose of keeping the portal open under Section 10.3 was so that data was available via the Avalara1099 portal as needed during that time.  It was not meant to be the "last chance" for Avalara or Avalara1099 customers to download all of the data or lose it forever.  Declaration of Robert Waite, ¶¶ 2, 3.[4]  There was no need to download all of the data during that time because, under section 10.4, all of the data would return to Avalara's possession at the expiration of the wind-down period,

---

[4] Indeed, when it attempted to download data from the portal after Tech Atlantis refused to return the AVA Data, Avalara learned (the hard way) that Avalara1099 was ***not*** built to allow for downloads of large amounts of data and that the download process was extremely slow, unstable and cumbersome.  Balasundarum Decl., ¶ 7.

REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE OR PRELIMINARY INJUNCTION- 8
No. 2:16-cv-01325-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

allowing Avalara to respond to customer demands that might arise. *Id.* Contrary to Tech Atlantis' assertion, the parties did not choose six months as the term for the Wind-Down Period based on an understanding that it would take that long to download all customer data from Avalara1099. Avalara needed a six month period to give it time to find a new vendor to replace Tech Atlantis should the Reseller Agreement be terminated. *Id*.

### 3. Tech Atlantis was *not* free to "destroy" the AVA Data under section 10.4.

Tech Atlantis contends that it was free, and even "required," to destroy the AVA Data at the end of the Wind-Down Period. Dkt. 20 at 11; Dkt. 23 at ¶ 8. That is nonsense. Section 10.4 provides that at the end of that period each party "shall promptly return, or, ***upon request***, certify as destroyed, to the other Party all Confidential Information . . ." Dkt. 19, Ex. A at § 10.4 (emphasis added). Thus the parties plainly contemplated that one of two things would happen with regard to the AVA Data: either Avalara would request that Tech Atlantis destroy it, or Tech Atlantis "shall promptly" return it to Avalara. Tech Atlantis does not and cannot contend that Avalara requested that it be destroyed. As such Tech Atlantis was required to return it, and destroying it would have been an even more serious breach than the breach it is committing now by refusing to return it.

### 4. Tech Atlantis is not excused from its obligation to return the AVA Data simply because that data is intertwined with Tech Atlantis' proprietary code.

Tech Atlantis argues that it cannot return the AVA Data without also disclosing its intellectual property that compiles the data into forms that can be filed with the IRS. It is not clear whether this argument is a response to the demand that Avalara is actually making (for a return of the data) or a "response" to the demand that Tech Atlantis fabricated for purposes of opposing this motion. But even assuming it is the former, it is not a valid excuse for Tech

REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE OR PRELIMINARY INJUNCTION- 9
No. 2:16-cv-01325-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Atlantis' refusal to perform. Tech Atlantis agreed to "return" the AVA Data. If it stored that data in a form that cannot be separated from its intellectual property, that is a problem of its own making.

### D. Avalara has alleged all facts necessary to entitled it to a return of the AVA Data under RCW 7.64.010 *et seq*.

Tech Atlantis cites *Garcia v. Google, Inc.*, 786 F.3d 733, 739 (9th Cir. 2015), for the proposition that Avalara cannot move for an order of possession or for a preliminary injunction without first explicitly pleading a claim under the statute. But *Garcia* says no such thing. It holds that a court can grant a preliminary injunction only as to claims for which the ***preliminary injunction*** was sought. *Id.* ("Garcia sued under a slew of legal theories, but she moved for a preliminary injunction on just one of them: the copyright claim. Hence, copyright is the only basis for the appeal."). That rule makes perfect sense, because a defendant is entitled to know what it is opposing when it responds to a preliminary injunction motion. Here, there is no question as to the legal theories on which Avalara seeks an order of possession and/or a preliminary injunction, that is, RCW 7.64.010 *et seq*. and breach of contract.

Tech Atlantis cites *Hall v. Law Guarantee & Trust Society, Ltd.*, 22 Wash. 305, 310 (1900), for the proposition that "over a hundred years ago" the Washington Supreme Court held that pleading a claim for replevin is not sufficient to support a jury verdict for conversion. But a lot has happened in the 116 years since *Hall* was decided. In 1938 the Federal Rules jettisoned formal, technical pleading requirements and replaced them with a liberal "notice pleading" standard of Rule 8. *See Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011). Under that standard a pleading is sufficient if it provides fair notice of: (1) the relief sought; and (2) the factual basis for that relief. Avalara has satisfied that standard.

REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE OR PRELIMINARY INJUNCTION- 10
No. 2:16-cv-01325-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

First, the relief Avalara seeks under the statute is an order of possession requiring Tech Atlantis to return the AVA Data. *See* RCW 7.64.020. In its Counterclaims Avalara sought relief in the form of preliminary injunction "requiring Tech Atlantis to return all AVA Customer data . . ." Dkt. 9 at 18. Second, the statute provides that an order of possession should issue where the party seeking the order demonstrates that it "is the owner of the property or is lawfully entitled to the possession of the property by virtue of a special property interest . . ." RCW 7.64.035. In its Counterclaims Avalara alleged that "[t]he AVA Data is owned by Avalara and its customers," that under the Reseller Agreement "Avalara has a possessory right to, and a property interest in the AVA Data," and that "Tech Atlantis has intentionally, wrongfully and willfully interfered with and appropriated the AVA Data." Dkt. 9 at 17.

If, notwithstanding the above, the Court agrees with Tech Atlantis regarding the need to identify the statute in the pleading, the appropriate course of action is to permit Avalara to amend its Counterclaims under Rule 15(a) to do so. The deadline to file amended pleadings is more than four months away (April 17, 2017), and Tech Atlantis will suffer no prejudice by allowing the amendment. *See Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015).

**E.  Data is "personal property" that can be "possessed" within the meaning of RCW 7.64.010 *et seq*.**

RCW 7.64.010 *et seq*. authorizes courts to issue an order requiring a party to turn over "possession" of "personal property." Tech Atlantis argues that the statute does not cover data because "personal property" is limited to property "capable of being physically possessed." But it cites no authority for the odd proposition that data cannot be "possessed." Webster's dictionary defines "possession" as "the act or condition of having in or taking into one's control

REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE OR PRELIMINARY INJUNCTION- 11
No. 2:16-cv-01325-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

or holding at one's disposal." Webster's Third New International Dictionary 1770 (1969). There is no question that the AVA Data is "in the control" and "at the disposal" of Tech Atlantis.

That ordinary definition of "possession" also disposes of Tech Atlantis' argument, that it does not possess the AVA Data or cannot hand over possession of that data because it is stored in a cloud storage device hosted by Amazon. Regardless of where Tech Atlantis decided to store the data, the data remains within its "control" and at its "disposal." It can retrieve the data from wherever it is stored and deliver possession of that data to Avalara, as the Reseller Agreement plainly requires.

Tech Atlantis observes, correctly, that there appear to be no published cases applying RCW 7.64.010 *et seq*. to a dispute over the possession of data. But that is no reason for this Court to decline to apply that statute according to the plain and ordinary meaning of its terms. It is true that the drafters of that statute, in 1854, likely had in mind things like farming tools and chickens when they used the term "personal property." However, the concept remains the same in the digital age. When one party possesses the property of another without a claim of right, it should be required to return it, whether returning it entails loading it onto a wagon or a thumb drive.

### F. The Court should reject Tech Atlantis' blithe dismissal of the interests of the public and of innocent third parties.

Tech Atlantis does not dispute that innocent third parties are being substantially harmed and will suffer further harm if it is allowed to continue in its refusal to return the AVA Data. Indeed, that harm has been compounded by Tech Atlantis' repeated insistence that it will not respond in any manner to any requests by Avalara1099 customers—no matter how urgent and regardless whether it is paid extra for that effort—from January 1 through April 15 of this year.

REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE OR PRELIMINARY INJUNCTION- 12
No. 2:16-cv-01325-RAJ

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Reply Declaration of Michael Brown, Ex. A. The *only* way these third parties will have access to their data is if this Court grants this motion.

While not disputing the significant harm that is being and will continue to be imposed on third parties, Tech Atlantis argues that the Court should disregard this consideration because Avalara could have used section 10.3 to prevent it in the first place. But as discussed above, Avalara was never required to use section 10.3 to retrieve all of the AVA Data; that return was secured with the inclusion of section 10.4. More importantly, for purposes of a preliminary injunction motion the interests of non-parties (and the public interest) is a separate factor that must be weighed independently of the question of which *party* will ultimately prevail in the lawsuit.

### III.   CONCLUSION

For the foregoing reasons Avalara respectfully requests that this Court enter an order requiring Tech Atlantis to return the AVA Data. Once the critical interests of innocent non-parties are secured by that return, the parties' dispute over contract performance can proceed on the normal schedule.

DATED this 6th day of January, 2017.

**GORDON TILDEN THOMAS & CORDELL LLP**
Attorneys for Defendant Avalara, Inc.

By  *s/Michael P. Brown*
Jeffrey M. Thomas, WSBA #21175
Michael P. Brown, WSBA #45618
1001 Fourth Avenue, Suite 4000
Seattle, Washington 98154
Telephone: (206) 467-6477
Facsimile: (206) 467-6292
Email: jthomas@gordontilden.com
Email: mbrown@gordontilden.com

REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE OR PRELIMINARY INJUNCTION- 13
No. 2:16-cv-01325-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Michelle Peterson
>Michelle Peterson Law, PLLC
>1420 Fifth Avenue, Suite 2200
>Seattle, WA  98101
>michelle@michellepetersonlaw.com

>Suzanne G. Clark
>Clark Law Firm, PLLC
>244 W. Dickson St., Suite 201
>P.O. Box 4248
>Fayetteville, AR  72702-4248
>sclark@clark-firm.com

DATED this 6th day of January, 2017.

>  s/ *Jeffrey M. Thomas*
> Jeffrey M. Thomas, WSBA #21175

REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE OR PRELIMINARY INJUNCTION- 14
No. 2:16-cv-01325-RAJ

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292